822 F.2d 59
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Omer MAGGARD, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 86-3543
 United States Court of Appeals, Sixth Circuit.
 July 2, 1987.
 
 Ben.Rev.Bd.
 AFFIRMED.
 On Appeal from the Benefits Review Board.
 Before JONES and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Omer Maggard appeals the Benefits Review Board's denial of his application for black lung benefits. Because we find that the decision to deny benefits is supported by substantial evidence, we affirm.
 
 
 2
 Maggard worked in the coal mine industry for almost fifteen years between the years of 1948 and 1962. After leaving the coal industry, Maggard owned and operated a grocery store and worked as a used car salesman. On August 14, 1972, Maggard filed a claim for benefits under the Black Lung Benefits Act. 30 U.S.C. Sec. 901 et. seq. (1982). This claim was denied initially by the Social Security Administration and upon review by the Department of Labor. Thereafter, at Maggard's request, the case was referred to an administrative law judge for a formal hearing, which was held on July 7, 1982.
 
 
 3
 Nine x-ray reports were received as exhibits at the hearing.
 
 
 4
 Date of X-ray Doctor Findings
---------------------------------------
8972 Jones Positive
8972 Whittlesey Negative
(reread 51573)
8972 Wheeler Negative
(reread 6273)
8972 R.J.B. Ambiguous
(reread 7673)
22279 Taylor Negative
22279 Sargent Negative
(reread 51779)
102880 Clarke Positive
102880 Sargent Negative
(reread 5881)
61482 Brandon Positive
 
 
 5
 The earliest X-ray taken in 1972, 10 years after petitioner's last exposure to coal dust, was read as positive for pneumoconiosis by one physician, as negative by two other physicians, and as ambiguous and insufficient for a positive diagnosis of pneumoconiosis by a fourth physician. A second X-ray was obtained in 1979. Two physicians, including one B reader, read this X-ray as showing no evidence of pneumoconiosis. A third X-ray taken in 1980 was read as positive by Dr. Clarke. However, Dr. Sargent, a B reader who was more qualified than Dr. Clarke as an X-ray reader, read this X-ray as negative. The final X-ray taken in 1982, was read as positive by Dr. Brandon, a B reader.
 
 
 6
 The record also contained evidence of four ventilatory function studies. The first study was conducted by Dr. Jones in 1972. His report indicated no respiratory impairment. A second study performed by Dr. Van Lith in 1973 also indicated no respiratory impairment. A third study performed by Dr. Clarke in 1980 did indicate respiratory impairment. This test was subsequently reviewed by another doctor, Dr. McQuillin, who found it to be unreliable. The final test, performed by Dr. Matheny in 1980, also indicated no respiratory impairment. One arterial blood gas study was performed in 1979 by Dr. Wasson. The results obtained indicated no respiratory impairment. The record also contained the results of several examinations performed by a number of doctors. The first was performed by Dr. Jones on August 9, 1972. Dr. Jones diagnosed pneumoconiosis on the basis of a chest X-ray. The doctor made no statement or conclusion with regard to petitioner's total disability.
 
 
 7
 Dr. Wasson examined petitioner on April 5, 1979. She diagnosed moderate pulmonary emphysema and concluded that this was sufficient to prevent petitioner from performing heavy manual labor. The petitioner was next examined by Dr. Clarke on October 28, 1980. A pulmonary function study conducted by Dr. Clarke revealed mild restrictive disease and severe obstructive disease. It was this same study that was later called into question by Dr. McQuillin. Dr. Clarke reviewed a chest X-ray and found it to be positive for pneumoconiosis. This X-ray was later reread as negative by a B reader. Dr. Clarke concluded that petitioner was totally and permanently disabled for all work in a dusty environment due to pneumoconiosis.
 
 
 8
 The petitioner was also examined by Dr. Matheny on November 17, 1980. The doctor diagnosed pneumoconiosis, emphysema and hypertension. His report contained no findings as to the degree of impairment suffered by the petitioner.
 
 
 9
 Because petitioner had over ten years of coal mine employment, his application for benefits was entitled to be considered under the interim presumptions set forth in 20 C.F.R. Sec. 727.203 (1986). Under this section, a miner will be presumed to be totally disabled due to pneumoconiosis if one of the following medical requirements is met: 1) A chest x-ray, biopsy, or autopsy establishes the presence of the disease. Id. Sec. 727.203(a)(1). (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease. Id. Sec. 727.203(a)(2). (3) Blood gas studies establish the existence of an impairment. Id. Sec. 727.203(a)(3). (4) Other medical evidence, such as the documented opinion of a physician, establishes the presence of a totally disabling respiratory or pulmonary impairment. Id. Sec. 727.203(a)(4).
 
 
 10
 Upon reviewing the medical evidence, the ALJ found that petitioner was not entitled to an invocation of the interim presumption of disability. The ALJ concluded:
 
 
 11
 The Claimant's testimony, as well as the medical evidence, establishes some respiratory impairment. However . . . I have concluded that the medical evidence does not establish that the Claimant's respiratory impairment totally disables him for his usual coal mine employment. A finding of total disability may not be based on lay testimony alone, and there must be some supporting medical evidence. Since the medical evidence in this case falls short of demonstrating total disability, I find that the Claimant . . . has not established a totally disabling chronic respiratory impairment.
 
 
 12
 The ALJ therefore denied petitioner's claim for benefits. The Benefits Review Board subsequently affirmed the ALJ's decision, finding that it was supported by substantial evidence. Petitioner now seeks review in this court.
 
 
 13
 An ALJ's findings of fact and conclusions of law in black lung disability cases are first appealable to the Benefits Review Board. The Board may not set aside such findings of fact and conclusions of law if they are 'supported by substantial evidence in the record considered as a whole or in accordance with law.' C.F.R. Sec. 802.301 (1986). The actions of the BRB are in turn reviewable by the courts of appeals. Our review is limited to "scrutiniz[ing] Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the [ALJ's] factual determinations." Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir. 1983) (quoting Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir. 1980)). A court of appeals may not set aside the findings of an ALJ if they are based on substantial evidence. Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir. 1985).
 
 
 14
 On appeal petitioner contends that the ALJ's findings are not supported by substantial evidence. Petitioner first argues that since some of the X-ray readings were positive for pneumoconiosis, the ALJ erred in declining to invoke the interim presumption under Sec. 727.203(a)(1). Petitioner is correct that there are some X-ray readings that indicate that he suffers from pneumoconiosis. This alone, however, does not mandate the invocation of the Sec. 727.203(a)(1) presumption. Where there is a conflict in the X-ray evidence, it is the ALJ's duty to carefully weigh the conflicting evidence and to determine whether the presumption should be invoked. See Back v. Director, 796 F.2d 169, 172 (6th Cir. 1986); Engle v. Director, 792 F.2d 63, 64 n.1 (6th Cir. 1986). In our view, the ALJ's conclusion that petitioner was not entitled to the Sec. 727.203(a)(1) presumption is supported by substantial evidence. The record contains nine x-ray readings, five of which are negative, three positive, and one ambiguous. Consequently, the ALJ was justified in concluding that the conflicting X-ray evidence was not sufficient to invoke the interim presumption.
 
 
 15
 We also find no error in the ALJ's refusal to invoke the interim presumptions under Sec. 727.203(a)(2), (3), and (4). The only arterial blood gas study contained in the record indicated no respiratory impairment. The results of the four ventilatory function studies tests are conflicting. Three of the tests indicated no respiratory impairment. The fourth test did indicate an impairment, but this test was subsequently reviewed by another doctor who found it to be unreliable. The several doctor's reports contained in the record are also conflicting. The ALJ is obligated to weigh conflicting test results and medical opinions to determine if the respective presumptions should be invoked. See Engle, 792 F.2d at 64 n.1. Our review of the record convinces us that the ALJ's conclusion that petitioner was not entitled to the interim presumptions under Sec. 727.203(a)(2), (3), and (4) is supported by substantial evidence.
 
 
 16
 Because petitioner failed to establish that he was totally disabled by pneumoconiosis, the decision of the Benefits Review Board that he was not entitled to benefits is AFFIRMED.