**Glen BACK, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNIT-
ED STATES DEPARTMENT OF LA-
BOR, Respondent.**

No. 85–3466.

United States Court of Appeals,
Sixth Circuit.

Submitted April 15, 1986.

Decided July 15, 1986.

J. Logan Griffith, Stevens, Griffith & Hunt, Prestonsburg, Ky., for petitioner.

J. Michael O'Neill, Bruce A. McDonald, Washington, D.C., for respondent.

Before LIVELY, Chief Judge, MERRITT and JONES, Circuit Judges.

LIVELY, Chief Judge.

In 1978 Congress added a provision to the Black Lung Benefits Act, 30 U.S.C. §§ 901 et seq., requiring review of all black lung claims pending on March 1, 1978, and all such claims denied before that date, upon request of the claimant. 30 U.S.C. § 945 (1982). The review was to be made under liberalized standards adopted in the Black Lung Benefits Reform Act of 1977. The claimant was given the choice of requesting review by either the Secretary of Health and Human Services or the Secretary of Labor. If a claim is referred to the Secretary of Labor for review a determination is made "with an opportunity for the claimant to present additional medical or other evidence ..., taking into account the amendments made by the [1977 Act]." If benefits are awarded, they are made retroactive "for a period which begins no earlier than January 1, 1974." *Id.*

### I.

Glen Back filed a claim for benefits on October 27, 1972. After a hearing his claim was finally denied and he did not seek judicial review. Following enactment of the 1978 legislation, Back requested review by the Secretary of Labor. A hearing was held before an administrative law judge (ALJ) where Back was represented by counsel. Back testified and introduced a number of exhibits, including three chest X-rays. The ALJ issued a decision and order denying benefits. In doing so, he found that Back had more than ten years of coal mine employment and evaluated the claim under the medical criteria set out in 20 C.F.R. § 727.203(a)(1)–(4) (1982). Since Back produced no proof that he satisfied the criteria of § 727.203(a)(2) respecting ventilatory studies or § 727.203(a)(3) relating to blood gas studies, the ALJ examined the evidence in light of § 727.203(a)(1) and § 727.203(a)(4):

§ 727.203 Interim presumption.

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

\*　　\*　　\*　　\*　　\*　　\*

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;

The ALJ determined that the X-ray evidence was in conflict, but that the most authoritative evidence was the latest reading of a 1980 X-ray as negative by a "B" reader, that is, a person certified by the Public Health Service as having especially high qualifications. The ALJ also considered "other medical evidence" under subsection (a)(4) and concluded that neither a 1973 report of Dr. McManus, a treating physician, nor a 1979 report of Dr. Miller, an examining physician, supported invocation of the presumption. Back appealed the ALJ's decision, and the Benefits Review Board (BRB) affirmed.

In seeking review of the BRB decision Back argues that the ALJ and the BRB erred in failing to find that the evidence he presented required invocation of the presumptions contained in 20 C.F.R. § 727.-203(a)(1) and (4) and that their decisions are not supported by substantial evidence.

Back also contends that he was entitled to a presumption of total disability due to pneumoconiosis based on 15 years of coal mine employment as set forth in 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.490(b)(1)(i).

## II.

■ We agree with the ALJ and BRB that "other medical evidence," consisting of a brief report from Dr. McManus, with no supporting clinical or laboratory information, was not sufficient to invoke a presumption of total disability due to pneumoconiosis. Dr. McManus merely listed Back's subjective complaints, diagnosed bronchitis and another unlisted, unrecognized condition and concluded that Back was "not able to work in coal mine." Additional "other evidence" relied upon by Back was a report of Dr. Miller. Dr. Miller found that while Back had a persistent cough, he had a normal cardiopulmonary system and that "[s]ome of the symptomalogy strongly suggests hyperventilation." We agree that it was reasonable to conclude that Dr. McManus's report was not a "documented opinion of a physician exercising reasoned medical judgment," and that Dr. Miller's report did not establish "the presence of a totally disabling respiratory or pulmonary impairment." Thus, the evidence did not invoke a presumption of disability under § 727.203(a)(4).

Neither the ALJ nor the BRB dealt with the claim that Back was entitled to benefits pursuant to 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.490(b)(1)(i). These statutory and regulatory provisions apply to claims filed with the Secretary of Health, Education and Welfare (now Health and Human Services) before July 1, 1973 and have been considered by this court on a number of occasions. *E.g., Ansel v. Weinberger,* 529 F.2d 304 (6th Cir.1976); *Lawson v. Secretary of Health and Human Services,* 688 F.2d 436 (6th Cir.1982).

Back's original claim in 1972 was denied upon a finding that the evidence was not sufficient to invoke the interim presumptions under 20 C.F.R. § 410.490. The decision rejecting that claim discussed some of the very X-ray evidence that Back now relied upon. Back did not seek judicial review of the original denial of benefits. Except for the provision of the 1978 amendment permitting review of all previously denied applications, his claim based on evidence presented during the original proceedings would be foreclosed. Since Back sought review pursuant to 30 U.S.C. § 945 by the Secretary of Labor rather than by the Secretary of Health and Human Services, it was proper to review his claim under the regulations of the Secretary of Labor, that is, under 20 C.F.R. § 727.203.

■ As a practical matter, if evidence is sufficient to trigger the presumption of totally disabling pneumoconiosis under 20 C.F.R. § 410.490, it will have the same effect under § 727.203. The statute that provides for regulations by the Secretary of Labor specifically directs that the criteria contained in such regulations shall not be more restrictive than those applicable to a claim filed on June 30, 1973, *i.e.,* those contained in 20 C.F.R. § 410.490. See 30 U.S.C. § 902(f)(2) (1982).

Turning to Back's claim that he is entitled to a presumption of total disability by reason of pneumoconiosis pursuant to 30 U.S.C. § 921(c)(4), this again adds nothing to his claim under 20 C.F.R. § 727.203. A claim is made out under § 921(c)(4) when there is an X-ray that is interpreted as negative for pneumoconiosis "and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment...." Since the "other evidence" relied upon by Back consists of two medical opinions, neither of which found a disabling respiratory or pulmonary impairment, the result is the same whether the presumption language of 30 U.S.C. § 921(c)(4) or of 20 C.F.R. § 727.203 is applied.

## III.

### A.

The remaining question is whether the X-ray evidence satisfied the criteria of 20 C.F.R. § 727.203(a)(1). Back's first X-ray was made in 1973 by a board-certified radiologist and read by him as negative for

pneumoconiosis. The second X-ray, made in 1976, was read by two board-certified radiologists, one a B reader, as positive. The third X-ray was made in 1980 by a non-certified physician who read it as positive. The X-ray was re-read by a board-certified radiologist, who is a B reader, as negative for pneumoconiosis.

Back argues that the 1976 X-ray and the first reading of the 1980 X-ray satisfied § 727.203(a)(1) since they established the existence of pneumoconiosis. He contends that a single positive X-ray satisfies the requirement of § 727.203(a)(1) and once such a reading is obtained, the only remaining issue is whether the presumption has been rebutted. This was the conclusion of the en banc court in *Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424 (4th Cir. 1986). Since a negative X-ray is not sufficient to rebut a presumption once invoked, Back argues that it was error for the ALJ and BRB to rely on the negative 1973 X-ray and the re-reading of the 1980 X-ray.

We believe Back confuses the question of using a negative X-ray to rebut a previously established presumption with deciding whether the presumption has been established at all when there are conflicting X-ray readings. In *Ansel v. Weinberger*, 529 F.2d 304, 310 (6th Cir.1976), we held that a presumption of totally disabling pneumoconiosis under 30 U.S.C. § 921(c)(4) could not be rebutted by evidence of a negative X-ray. This is so because the § 921(c)(4) presumption presupposes the existence of a negative X-ray and bases the presumption on other evidence of a totally disabling respiratory or pulmonary impairment. In *Ansel*, there was no question of whether X-rays showed sufficient evidence of impairment to invoke a presumption of disability. The presumption was triggered on the basis of other evidence of a totally disabling respiratory or pulmonary impairment. The error in *Ansel* was the use of a negative X-ray to rebut a presumption based on other evidence.

The question in the present case is a different one: was the existence of pneumoconiosis established by X-ray evidence? In reaching the conclusion that its existence was not so established, the ALJ and

the BRB considered all the conflicting X-ray evidence and determined that the negative re-reading of the most recent X-ray by a B reader was substantial evidence that the existence of pneumoconiosis was not established. Since pneumoconiosis is a progressive disease and a B reader is highly qualified to interpret X-rays, the ALJ and the BRB found this evidence more persuasive than either the 1976 reading or the original reading of the 1980 X-ray by a physician who is not board certified in radiology or classified as a reader by the Public Health Service.

### B.

■ Where there is a single X-ray that is read as positive, the Secretary may not create a conflict in the evidence by having that X-ray re-read as negative. *Dickson v. Califano*, 590 F.2d 616 (6th Cir.1978); *Lawson v. Secretary of Health and Human Services*, 688 F.2d 436, 438–39 (6th Cir.1982). Because of the progressive nature of pneumoconiosis, earlier negative and later positive X-rays of the same individual are not necessarily in conflict. *Haywood v. Secretary of Health and Human Services*, 699 F.2d 277, 284 (6th Cir.1983). Nevertheless, the existence of an earlier negative X-ray provides a basis for the Secretary to hold that later positive ones do not establish the existence of pneumoconiosis as a matter of law, and permits the Secretary to require that positive X-rays be re-read serially. *Couch v. Secretary of Health and Human Services*, 774 F.2d 163, 167–68 (6th Cir.1985). In this situation the Secretary may not deny benefits solely on the basis that the earlier negative X-ray creates a conflict. Only when a serial re-reading of the positive X-rays produces a later negative reading by a qualified reader may the Secretary find a conflict. It is the *later* negative reading that discloses the conflict and provides substantial evidence for a denial of benefits. As the decisions discussed herein demonstrate, this court has rejected the plurality view of the Fourth Circuit in *Stapleton v. Westmoreland Coal Co.*

■ The Black Lung Benefits Amendments of 1981 provide that where there is

"other evidence that a miner has a pulmonary or respiratory impairment, the Secretary shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram...." 30 U.S.C. § 923(b) (1982). This provision prohibits the Secretary from relying on negative re-readings of certain positive X-rays. However, the re-reading relied on by the Secretary in the present case related to the 1980 X-ray which had not been interpreted as positive by either a board-certified or a board-eligible radiologist. Because the first reader did not meet the standard of the statute, the Secretary was free to disregard the original reading and have this latest in the series of X-rays re-read.

### CONCLUSION

There was a genuine conflict in the X-ray evidence in the present case. The Secretary did not err in his application of the regulations, and the decision to deny benefits is supported by substantial evidence.

The petition for review is denied, and the decision of the Benefits Review Board is affirmed.